IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHARLES SMITH,

     Plaintiff,

v.                                                                CASE NO. 1:15-cv-115-MP-GRJ

CAROLYN W. COLVIN,
Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).   ECF No. 1.  The Commissioner has answered,

and both parties have filed briefs outlining their respective positions.  ECF

Nos. 6, 9, 12.  For the reasons discussed below, the undersigned

recommends that the Commissioner's decision be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB and SSI benefits on

August 25, 2011, alleging disability beginning September 1, 2010.  R. 57,

232-44.  His claim was denied initially and upon reconsideration.  At

Plaintiff's request, a hearing was held before an Administrative Law Judge

("ALJ"), on July 30, 2013, at which Plaintiff, his girlfriend, and a vocational

expert (VE) testified.  R. 54-77.  The ALJ issued an unfavorable decision

on August 6, 2013; the Appeals Council denied review.  R. 34-48, 9-14.

This appeal followed.  Plaintiff raises two issues for review: (1)

Whether substantial evidence supports the ALJ's assessment of the

medical opinion evidence; and (2) Whether the ALJ correctly applied

controlling Eleventh Circuit law in assessing Plaintiff's credibility.  ECF No.

9.

## II.  <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by

substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the

evidence must do more than merely create a suspicion of the existence of

a fact, and must include such relevant evidence as a reasonable person

would accept as adequate to support the conclusion.[2]

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be

---

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

expected to last for a continuous period of not less than twelve months.[6]

The impairment must be severe, making Plaintiff unable to do his previous

work, or any other substantial gainful activity which exists in the national

economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]

First, if a claimant is working at a substantial gainful activity, he is not

disabled.[9]   Second, if a claimant does not have any impairment or

combination of impairments which significantly limit his physical or mental

ability to do basic work activities, then he does not have a severe

impairment and is not disabled.[10]   Third, if a claimant's impairments meet

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1, he is disabled.[11]   Fourth, if a claimant's impairments do not prevent him

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2016 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's

impairments (considering his residual functional capacity ("RFC"), age,

education, and past work) prevent him from doing other work that exists in

the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past

relevant work initially lies with the plaintiff.[14]  The burden then temporarily

shifts to the Commissioner to demonstrate that "other work" which the

claimant can perform currently exists in the national economy.[15]  The

Commissioner may satisfy this burden by pointing to the Medical-

Vocational Guidelines (the "Grids") for a conclusive determination that a

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.
3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such

---

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

evidence.[20]  Only after the Commissioner meets this burden does the

burden shift back to the claimant to show that he or she is not capable of

performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

### A. Findings of the ALJ

The ALJ determined that Plaintiff has the severe impairments of

substance addiction disorders (cocaine and ETOH dependence) and

schizophrenia.  Plaintiff does not have an impairment or combination of

impairments that meets or equals the listings.  In assessing the severity of

Plaintiff's mental impairments, the ALJ considered the "paragraph B"

criteria and found that Plaintiff has no restriction in activities of daily living,

moderate difficulties in social function, mild difficulties in concentration,

persistence, or pace, and no episodes of decompensation.  Therefore, the

"paragraph B" criteria were not satisfied.  The ALJ found that the

"paragraph C" criteria were not satisfied.  Based on the degree of limitation

found in the "paragraph B" mental function analysis, the ALJ determined

that Plaintiff has the RFC to perform a full range of work at all exertional

---

[20] *See id.*

levels, with the following nonexertional limitations: simple, routine, and repetitive tasks; he can relate adequately to supervisors; he is limited to only occasional contact with co-workers and the general public; and he can deal with changes in the work setting.   The ALJ determined that Plaintiff's statements expressing greater limitations were not entirely credible because of evidence in the record relating to employment after the alleged onset date, because of Plaintiff's significant history of legal trouble, and because Plaintiff's subjective complaints were not supported by the medical records.  Relying on the testimony of a VE, the ALJ found that for a person with Plaintiff's age, education, work experience, and RFC, there are jobs that exist in substantial numbers in the national economy that Plaintiff can perform, such as: marker; cleaner/housekeeping; and routing clerk.  The ALJ therefore found that Plaintiff was not disabled.  R. 37-48.

## B.  *Medical Evidence*

William Beaty, Ph.D, performed a consultative psychological evaluation of Plaintiff in October 2011,[21] noting Plaintiff's allegations of leg

---

[21] Dr. Beaty's report is dated "March 21, 2011," but the report itself states that the examination took place in October 2011 and references Plaintiff's release from incarceration in June 2011, and it is therefore apparent that the date of the report is a typographical error.

and foot problems and depression.  Plaintiff reported that he quit working in
September 2010 due to back and legs problems.  He reported an extensive
history of incarceration for controlled substance and other offenses, with
his most recent release in June 2011.   Dr. Beaty noted depressed mood,
constricted and flat affect, and Plaintiff's reports of auditory/visual
hallucinations, which Plaintiff stated were improved with medication.  The
examination was otherwise normal.

Plaintiff reported that he had abstained from drugs and alcohol for
the past 60 days, but Dr. Beaty reported that a clinic note from Meridian
dated 10/3/11 evidenced Plaintiff was drinking a half case of beer daily and
last used cocaine three weeks previously.  Plaintiff stated that he believed
his depression was due to his substance abuse and not being able to find
work.  Plaintiff described being able to care for his personal needs, do
some shopping with his fiancé, attend church, and do some laundry and
yard work.  R. 349-51.

Dr. Beaty diagnosed Plaintiff with schizoaffective disorder, alcohol
and cocaine abuse in remission, and antisocial personality disorder.
Based on Plaintiff's statements regarding his ability to do work-related

tasks, Dr. Beaty reported that Plaintiff could sit for 15 minutes, stand for 10 minutes, walk for 20 minutes, and lift and carry only 5-10 pounds.  The only work-related task directly observed by Dr. Beaty was that Plaintiff changed position frequently while sitting.  Dr. Beaty noted no deficits in Plaintiff's hearing, vision, and speech.   Plaintiff reported that his mind wanders, he is forgetful, and he is easily distracted.  Plaintiff interacts most easily with family and others well-known to him, and avoids strangers and public crowds.  R. 351.

In November 2011, Lance Chodosh, M.D., completed a consultative examination of Plaintiff.  Plaintiff reported a history of chronic low back and neck  pain following a motor vehicle accident.  Plaintiff stated that his legs jump and twitch and that he suffers from nocturnal leg cramps.   He reported a history of substance abuse, in remission for two months.  Plaintiff said he had auditory hallucinations and a history of incarceration.  Plaintiff stated that he last worked as a cook in September 2010, and had previously worked as a concrete finisher, construction worker, and pipe layer.   Plaintiff reported that he is  able independently to perform activities of daily living but must sit at times when showering because of leg pain.

He cannot walk more than ½ block or stand continuously for more than 10 minutes, and he must change positions frequently when sitting.  He stated he cannot squat completely and can only occasionally bend at the waist. He stated that he cannot lift more than 15 pounds or drive further than short distances.  Plaintiff also reported a history of lumbar spine surgery and treatment for left shoulder separation.  Dr. Chodosh observed that Plaintiff appeared healthy, was fully oriented, had normal speech pattern, and normal affect.  Plaintiff was cooperative and displayed minimal pain behavior and normal systems, with the exception of some very minor decreased motion of his  shoulders, toes, and hips.  Plaintiff could not walk on his toes  and indicated that he could not squat and rise completely, though no attempt was made.  R. 360-68.

Dr. Chodosh diagnosed Plaintiff with psychiatric illness, including alcohol and substance abuse, reportedly in remission, chronic back pain, and moderate obesity.  Dr. Chodosh concluded that Plaintiff could stand, walk, sit, bend over at the waist, kneel, lift, carry and handle objects and could  probably squat occasionally.  He also concluded that Plaintiff could see, speak, and hear normally.  R. 368.

Linda Skalsky, ARNP, provided mental health care to Plaintiff from
September 2010 through June 2013.  Ms. Skalsky completed a mental
impairment questionnaire in July 2013.  She noted that Plaintiff missed
appointments and was discharged before resuming services in June.
Plaintiff had ongoing psychosis, anxiety, and panic episodes.  She
observed that his medication side effects included drowsiness and
lethargy.  R. 459.  On a checklist, she identified the following signs and
symptoms:  decreased energy, blunt/flat/inappropriate affect, generalized
persistent anxiety, mood disturbance, difficulty thinking or concentrating,
paranoid thinking or inappropriate suspiciousness, perceptual or thinking
disturbances, and hallucinations or delusions.  R. 460.  Ms. Skalsky
concluded Plaintiff had moderate restrictions of activities of daily living,
marked difficulties in social functioning, marked deficiencies of
concentration, persistence, or pace, and three repeated episodes of
decompensation, each of at least two weeks duration, within a 12-month
period.   R. 461.  Ms. Skalsky concluded Plaintiff had a medically
documented history of a chronic organic mental, schizophrenic, or
affective disorder of at least two years' duration causing more than a

minimal limitation of ability to do any basic work activity with a residual

disease process  that has resulted in such marginal adjustment that even a

minimal increase in mental demands or change in the environment would

be predicted to cause the  individual to decompensate.  R. 462.  Ms.

Skalsky responded "unknown" regarding whether Plaintiff was a malingerer

and opined that he could manage any benefits in his own  best interests.

R. 462.

In June 2013, state agency medical consultants Dorothy Holmes,

Ph.D., and  Maxine Ruddock, Ph.D., reviewed Plaintiff's medical records

and concluded that  his psychiatric problems did not cause more than a

"moderate" functional  limitation.  R. 101-105, 114-115 117-119.

## C. *Hearing Testimony*

Plaintiff testified that he has not worked since September 2010.  He

testified that he hears voices "mostly all the time" and sometimes sees

things that aren't there.  He was never fired from a job because of that.  He

does not like to be around crowds.  In a typical day, he gets up, walks his

dog, and watches television.  He does not have problems following a

program but loses interest after about 30 minutes.  He does some

sweeping but does not cook because he has trouble seeing the directions. Plaintiff's fiancé does the housework.  Plaintiff calls friends if he needs a ride somewhere.  He sometimes goes grocery shopping.  He has a short memory.  He sleeps "pretty good" since being on medication, but wakes up at 2:00 or 3:00 a.m.  He does not nap a lot.  R. 56-64.

On questioning by his representative, Plaintiff testified that he takes medication for bipolar and schizophrenia.  He testified that his condition is not getting better.  His medication has been increased to help him rest at night.  Plaintiff testified that his medications cause sleepiness and fatigue. He couldn't describe his energy level, but stated it was different now than it used to be.  He still has anxiety, and has good days and bad days with staying on task.  He denied an ability to stay focused during a workday.  R. 64-67.

Plaintiff's fiancé, Vickie Salley, testified that she has known Plaintiff for eight years.  She testified that his emotions have decreased and he doesn't really have emotions anymore.  Ms. Salley testified that Plaintiff used to be physically violent.  She reminds him to do things because he is not independent anymore, such as changing his shirt and socks.  Plaintiff

is paranoid and has no energy.  He lays down a lot during the day.  He does not have friends or social activities.  In her opinion, Plaintiff could not stay focused to work an eight-hour day.  He likes to stay in the bed.  R. 68-73.

The VE testified that a person of Plaintiff's age, education, and past work experience, with no physical limitations, but with the nonexertional limitations identified in the ALJ's RFC, could not return to Plaintiff's past work in construction.  There are other jobs such a person could perform, including the light, unskilled jobs of marker, cleaner/housekeeping, and routing clerk.  R. 74-75.

## IV. DISCUSSION

### A. Assessment of Opinion Evidence

Plaintiff first contends that substantial evidence does not support the ALJ's decision, which he claims improperly ignored the observations and diagnosis of the consulting psychologist, Dr. Beaty, and Plaintiff's treating ARNP Linda Skalsky.  ECF No. 9 at 11.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating

physician unless "good cause" is shown to the contrary.[22]  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[23]

While there is no requirement for the ALJ to discuss every medical record in the administrative record, he is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor."[24]  Additionally, because an ALJ is not permitted to substitute his judgment for that of the medical experts,[25] the ALJ cannot reject portions of

---

[22] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[23] 20 C.F.R. § 404.1527(d)(2).

[24] Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990)(noting "the ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence").

[25] Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986); Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).

a medical opinion without providing an explanation for such a decision.[26] Where an ALJ fails to sufficiently explain how he reached his decision, the Court may not speculate.[27]

With respect to Dr. Beaty's consultative examination, the ALJ determined that "little weight" should be afforded to his conclusions regarding Plaintiff's functional limitations because they were based almost entirely on Plaintiff's subjective reports.  The work-related limitations noted by Dr. Beaty were largely based on Plaintiff's alleged *physical* impairments (back and leg problems), which are not at issue in this appeal.  *See* R. 351. To the extent that Dr. Beaty identified nonexertional limitations in concentration, persistence, pace, and social functioning, the ALJ addressed such limitations in formulating the RFC, which limits Plaintiff to simple, routine, and repetitive tasks, and which provides for restrictions in social contact.  On this record, the Court finds that the ALJ's decision to afford "little weight" to the other functional limitations identified by Dr. Beaty is supported by substantial evidence.

---

[26] Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1337 (M.D. Fla. 2003).

[27] Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984).

With respect to the opinion of ARNP Skalsky, as the Commissioner points out under the Social Security regulations, a nurse practitioner (ARNP) does not qualify as an "acceptable medical source," 20 C.F.R. § 404.1513(a), and cannot establish the existence of a medically determinable impairment. *See* SSR 06–03p. However, Social Security Ruling 06–03p further points out that "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs," medical sources, such as licensed clinical social workers, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06–03p. Therefore,"[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id*.

In this case, the ALJ afforded "no weight" to ARNP Skalsky's opinion finding moderate restrictions of ADL's and marked difficulties in social functioning and concentration, persistence, or pace. R. 45. The ALJ

carefully articulated his reasons for assigning the opinion no weight: (1) the opinion is not from an acceptable medical source and cannot establish the existence of a medically determinable impairment; (2) the opinion is not supported by Plaintiff's treatment records which reflect no complaints of medication side effects and reflect that Plaintiff reported having good energy, and Plaintiff's statements that he independently performed ADL's; (3) ARNP Skalsky's questionnaire is internally inconsistent because despite finding marked difficulties in concentration, persistence, or pace, and repeated episodes of decompensation, she opined that Plaintiff could manage his own finances; and (4) ARNP Skalsky's questionnaire fails to address Plaintiff's history of drug and alcohol abuse and fails to discuss his failure to comply with treatment. *Id*.

The ALJ's decision is supported by substantial evidence in the record. For example, Meridian outpatient progress notes in January 2012 show that Plaintiff had identified a list of "coping skills" to deal with depression and anxiety, which included reading, basketball, watching TV, and talking with family and church members. Plaintiff reported that he was playing basketball twice a week and walking his dogs daily, and that he

listened to jazz music 3-4 times a week.  R. 441.  The notes of Plaintiff's participation in outpatient group therapy over a period of many weeks generally reflect that he was an active participant, gave good feedback during the group, and he described himself as "determined and a hard worker" and a "spiritual and positive person."  R. 437-38.  One note states that Plaintiff "continues to shine in group – proactive with his comments." R. 436.  ARNP Skalsky's objective assessment in her clinic notes in February 2012 show that Plaintiff had good ADL's, appropriate manner, normal speech, grossly intact cognition, and logical and organized thought processes.  R. 433; *see also* R. 424 (September 2012 notes); R. 420 (February 2013 notes).  Plaintiff complained of ongoing symptoms of paranoia, hallucinations, anxiety, and depression, according to June 2013 medication management notes, but ARNP Skalsky noted that Plaintiff was experiencing "recent severe stressful events/problems," ordered a change in medication, and assessed only moderate difficulties in social or occupational functioning.  R. 416.

The record thus reflects that the ALJ specifically stated the weight

afforded to the ARNP Skalsky's opinion and then articulated detailed reasons for affording the opinion no weight. Those reasons are supported by the clinic notes. On this record, the Court finds that the ALJ's rejection of ARNP Skalsky's assessment of Plaintiff's mental functional limitations is supported by substantial evidence.

### B. Plaintiff's Credibility

Plaintiff's second issue asserts that the ALJ's credibility assessment violates the Eleventh Circuit's pain standard. ECF No. 9 at 20.

A claimant may establish his disability through his own testimony of pain or other subjective symptoms. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1560–61 (11th Cir.1995). The ALJ must consider a claimant's testimony of pain and other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard." *See Foote*, 67 F.3d at 1560. Under that test, evidence of an underlying medical condition must exist. *Id.* If that threshold is met, then there must be either objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected

to give rise to the alleged pain or symptoms. *Id.* A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *Id.* at 1561.

If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors. *Id*. § 404.1529(c)(1)-(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms. *Id.* § 404.1529(c)(3). The ALJ then will examine the claimant's statements regarding his symptoms in relation to all other evidence, and

consider whether there are any inconsistencies or conflicts between those statements and the record. *Id.* § 404.1529(c)(4).

If the ALJ decides not to credit the claimant's testimony as to his subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding. *See Foote*, 67 F.3d at 1561–62. While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient for the Court to conclude that the ALJ considered the claimant's medical condition as a whole. *Id*. at 1562. The ALJ's articulated reasons must also be supported by substantial evidence. *Jones v. Dep't of Health & Human Servs*., 941 F.2d 1529, 1532 (11th Cir.1991). The Court will not disturb a properly articulated credibility finding that is supported by substantial evidence. *Foote*, 67 F.3d at 1562. The failure to articulate reasons for discrediting a claimant's subjective testimony, however, requires that the testimony be accepted as true and becomes grounds for remand where credibility is critical to the outcome of the case. *Id.*

In this case, the ALJ applied the correct pain standard and found that

Case 1:15-cv-00115-MP-GRJ  Document 13  Filed 09/09/16  Page 24 of 26

while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the limiting effects of such symptoms were not entirely credible.  R. 42. The ALJ then articulated reasons for this conclusion.  The ALJ's determination that Plaintiff complaints of disabling symptoms were not credible was based largely on Plaintiff's history, which is a factor that may be considered.  20 C.F.R. § 404.1529(c)(1)-(2).  The ALJ noted that Plaintiff had a consistent work history until 2010, when he stopped working and began collecting unemployment benefits which required verification that Plaintiff was willing, able, and ready to work.  In January 2012, Plaintiff missed a group therapy session because he was working.  R. 444.  The ALJ pointed to Plaintiff's extensive history of legal problems, as well as his dishonorable discharge from the Army, in concluding that Plaintiff's honesty was questionable.  For these reasons, the ALJ concluded that the objective evidence of record should be relied on more heavily than Plaintiff's statements.  R. 43.

As the ALJ then carefully explained, the medical evidence of record as a whole did not reveal significant functional limitations that would

prevent Plaintiff from performing work at all exertional levels with the limitations included in the RFC.  R. 42-46.  Although Plaintiff challenges the ALJ's credibility determination, he does not point to evidence in the record that undermines this conclusion.  The evidence of record therefore provides substantial evidence to support the ALJ's finding that Plaintiff allegations  of disabling limitations were not credible.  *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** this 9th day of September 2016.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**